IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| IN RE THE COMPLAINT AND PETITION OF COSTAR SAILING, LLC, AS OWNER, AND J&J YACHT SERVICES, LLC, AS OWNER PRO HAC VICE/OPERATOR, OF THE S/V CARPE AURA, HULL #: FPA54253I819 AND OFFICIAL NO. 1291579 | CIV. NO. 3:21-CV-0059<br><br>ACTION IN ADMIRALTY FOR LIMITATION OF LIABILITY PURSUANT TO RULE 9(H) |

**CROSS-NOTICE OF 30(B)(6) DEPOSITION OF FOUNTAINE PAJOT**

TO:   Email: justin.shireman@wilsonelser.com
    Justin Shireman, Esq.
    Wilson Elser Moskowitz Edleman & Dicker LLP
    260 Franklin Street, 14th Floor
    Boston, MA 02110-3112

PLEASE TAKE NOTICE that, pursuant to Rules 26, 30 and 32 of the Federal Rules of Civil Procedure, Costar Sailing, LLC and J&J Yacht Services, LLC, by and through undesigned counsel, will take the oral deposition of Fountaine Pajot, S.A. on **October 11, 2023** at **9:00 a.m.**, by stenographic means at the office of Wilson Elser, Moskowitz Edleman & Dicker LLP, 150 East 42nd Street, New York, NY 10017. Fountaine Pajot, S.A. shall designate one or more officers, directors or managing agents who are competent to testify on its behalf. The person(s) who is/are designated to testify on Fountaine Pajot, S.A.'s behalf must testify as to its knowledge of the areas of inquiry listed on **Exhibit A** attached hereto.

This deposition will be taken before an officer authorized to administer oaths and take testimony pursuant to Rule 28 of the Federal Rules of Civil Procedure and will be

1

taken for use as evidence and/or trial purposes. This deposition may be videotaped to use as evidence and/or trial purposes and may be continued from day to day until completed.

                                              Respectfully submitted,

                                              **ANDREW C. SIMPSON, P.C.**
                                              Attorneys for Plaintiff

Dated:   October 2, 2023                   __/s/__ Andrew C. Simpson
                                              Andrew C. Simpson (VI Bar 451)
                                              2191 Church Street, Suite 5
                                              Christiansted, VI 00820
                                              (T) 340-719-3900

# EXHIBIT A

### DEFINITIONS

"Carpe Aura" refers to the Helia 44 bearing hull number FR FPA 54243 I8 19 and is the vessel that is the subject of the instant litigation.

### DOCUMENT REQUEST

1. Any decision to add a valve <u>at or in the vicinity of the gas manifold</u> that would control the flow of LPG to the BBQ that was offered as an option on Helia 44 model vessels and specifically:

   a. when the decision to add the valve was made;
   b. the reason Fountaine Pajot decided to add the valve;
   c. why such a valve was not installed on the Carpe Aura;
   d. the hull number of the first Helia 44 that was built with such a valve.

2. If Fountaine Pajot claims that it equipped any vessels purchased through or by ACY or CYOA with an inline leak detector, the identity all such vessels by model, year, purchaser, selling dealer, and hull number.

3. Whether the Carpe Aura was equipped with an inline leak detector for the cooking gas system at any time before its delivery in the British Virgin Islands and, if so,

   a. the city and country where Fountaine Pajot claims the inline leak detector was installed;
   b. the company or entity Fountaine Pajot claims installed the inline leak detector;
   c. when the inline leak detector was installed; and
   d. the identity of any person who can testify from personal knowledge that the inline leak detector was actually installed in the Carpe Aura.

4. If the Carpe Aura did not have an inline leak detector for its cooking gas system at the time it was delivered in the British Virgin Islands,

   a. the reason Fountaine Pajot did not install the inline leak detector;
   b. the identity of any individuals who worked at Fountaine Pajot at the time the Carpe Aura was under design and/or construction with knowledge of the reason Fountaine Pajot did not install the inline leak detector.

5. Whether Fountaine Pajot offered an inline leak detector for the cooking gas system on Helia 44 models as an option and, if so:

    a. when if first began offering such an inline leak detector as an option;
    b. how it communicated the availability of such an option to potential purchasers;
    c. the amount Fountaine Pajot charged a purchaser for such an option in 2018 and 2019.

6. The criteria Fountaine Pajot used for determining whether a vessel would be equipped with an inline leak detector for the cooking gas systems on the vessels it built from 2013 to the present and if the criteria changed during that time period, the date(s) of such change(s) and the reason(s) for such change(s).

7. The design/construction history of the Carpe Aura from commencement of construction or, if earlier, from the date of reaching an agreement to sell the Carpe Aura to a purchaser, including, without limitation:

    a. When construction first began;
    b. the date of any and all changes that relate to the cooking gas system during the construction of the Carpe Aura and the nature of such changes;
    c. the reason for any such changes identified in response to item 7.b, above;
    d. the manner by which Fountaine Pajot documented such changes identified in response to item 7.b, above;
    e. the date a purchaser specified that it wished to purchase the Carpe Aura with the BBQ option;
    f. the date the Carpe Aura left the Fountaine Pajot "production center" in France;
    g. the date Carpe Aura arrived in La Rochelle, France;
    h. the nature of all work done on or to the Carpe Aura that involved, in any way, the gas cooking system (including the fuel supply and the BBQ option) while in La Rochelle, France before the Carpe Aura was loaded on a vessel for shipment to the British Virgin Islands.

8. Whether Fountaine Pajot contends that the gas cooking system on a Helia 44 should not be used

    a. when underway in good weather and calm seas;
    b. when at anchor or on a mooring in good weather and calm waters;
    c. when tied to a dock;
    d. when starting the propulsion engines.

9. If Fountaine Pajot contends that the gas cooking system on a Helia 44 should not be used when starting the vessel's propulsion engines, every manner (including manuals, warning signs, etc.) in which this information was communicated to users of, and/or passengers on, the vessel.

10. If Fountaine Pajot contends that valve on the tank that supplies LPG to the gas cooking system on a Helia 44 should be closed when users and/or passengers on the vessel are not cooking, the manner in which this information was communicated to users of, and/or passengers on, the vessel.

11. The location and substance of every warning that Fountaine Pajot physically installed on the Carpe Aura that relates to the cooking gas system.

12. The specific owner's manual placed aboard the Carpe Aura by Fountaine Pajot at or before the time the Carpe Aura was shipped from France to the British Virgin Islands.

13. Any documentation relating to the cooking gas system that Fountaine Pajot placed aboard the Carpe Aura at or before the time the Carpe Aura was shipped from France to the British Virgin Islands.